**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**LORNE JAY GREEN,**

        **Plaintiff,**

              **v.**

**TANDBERG, INC.,**

        **Defendant.**

**Case No. 2:09-cv-17
JUDGE GREGORY L. FROST
Magistrate Judge Norah McCann King**

<u>**OPINION AND ORDER**</u>

This matter is before the Court on Defendant Tandberg, Inc.'s Motion for Summary Judgment (Doc. # 43), Plaintiff Green's Response to Summary Judgment Motion of Defendant Tandberg, Inc. (Doc. # 46), and Defendant Tandberg, Inc.'s Reply in Support of its Motion for Summary Judgment (Doc. # 47). For the reasons that follow, the Court **GRANTS** Defendant's motion.

## I. Background

Defendant Tandberg, Inc. sells videoconferencing systems, network infrastructure, and management software. Defendant has offices throughout the United States and Canada, including its headquarters in Reston, Virginia.

Plaintiff Lorne Jay Green is a Canadian citizen. He began working for Defendant in August 2001 as a sales engineer. Plaintiff worked from his home office in Illinois. In 2004, Plaintiff moved to Pickerington, Ohio, where he continued to work for Defendant from his home office. Throughout his employment with Defendant, Plaintiff reported to different supervisors, including Mark Dumas, Simon Mouer, and David Mattlin. Defendant considered Plaintiff to be a good employee. He was technically competent and responsive to requests from Defendant's

1

employees and from Defendant's customers.  Plaintiff received raises in salary throughout the course of his employment and was sponsored by Defendant for his H-1B temporary, nonimmigrant worker status visa and for permanent United States residency, *i.e.*, his "green card."

As a sales engineer, Plaintiff's duties included performing site surveys to determine necessary equipment specifications based upon customer requirements; supporting integrators and sales staff on the latest technical advances of Defendant's product lines; supporting engineering mechanical design and acoustical room layout; providing support for product demonstrations and training to customers; providing engineering support and training for sales staff; and providing suggestions on how to improve existing equipment.

Although Plaintiff worked from his home office, he attended various Tandberg events during the course of his employment, including training sessions and Sales Kick-off ("SKO") meetings.  Defendant held yearly SKO meetings at various locations across the United States and Canada for the purposes of boosting employee morale, introducing and building excitement about new Tandberg products, and performing training sessions on new products.

On July 7, 2007, after returning from vacation, Plaintiff tendered his resignation.  In the resignation Plaintiff indicated that he believed he was constructively discharged based upon being subjected to anti-Semitic discrimination and harassment, interference with his permanent residency petition, and false statements about his character.

Plaintiff testified that on five occasions his coworker Tony Intrabartolo called him a "fucking Jew."  The first time was at an SKO meeting in Dallas, Texas in January 2002 where Intrabartolo made the comment in front of Plaintiff's coworker, Dana Hudson.  The second was

2

at a training session in Reston, Virginia sometime in 2002, in front of Defendant's director of human resources Kaye Stewart-Bailey, advertising vice president Julie Gouldin, and coworker Jordan Owens. Plaintiff testified that Stewart-Bailey laughed at the remark. The third occasion was in July 2002 at a training session in Dallas, Texas in front of Gouldin and Owens. Plaintiff is unsure, but believes that Stewart-Bailey was also present. The fourth occurrence was in January 2003 at an SKO meeting in Orlando, Florida. Intrabartolo made the comment in front of coworkers Owens, Peter Gaffney, Jim Jackovsky, Steve Kapinos, and Kristi Ballenger, human resources director Stewart-Bailey, advertising vice president Gouldin, and chief operating officer Andy Miller. Later, at a meeting with several of these individuals, Owens offered an apology on behalf of the group. The last time Intrabartolo called Plaintiff the name was in 2004 during a telephone conversation.

Plaintiff complained about Intrabartolo's name-calling to his supervisor or to human resources three times between 2002 and 2004. Plaintiff was informed by Supervisor Mouer that Intrabartolo would be disciplined for his behavior and given sensitivity training. There were no further comments about Plaintiff's race or religion after 2004.

Plaintiff also testified that Intrabartolo referred to him as a "fucking Canadian" between six and eight times between 2002 and 2006 and two other coworkers called him that same name one time each during the same time period. Plaintiff avers that he complained to Defendant on several occasions about the reference.

In 2004, Defendant submitted an H-1B petition to the United States Immigration and Nationalization Services ("INS"), now known as Immigration and Customs and Enforcement ("ICE"), on Plaintiff's behalf. INS granted the petition, which provided Plaintiff temporary,

nonimmigrant worker status in the United States and allowed him to work for Defendant in the United States through September 30, 2007 so long as he remained employed with Defendant.

In August 2006, Plaintiff asked Defendant if it would support his desire to obtain permanent residency in the United States. Defendant agreed to support Plaintiff's petition for a green card and offered to pay up to $2,000.00 in expenses for legal services in connection with it. Defendant introduced Plaintiff to an immigration attorney, Adam Rosser, and encouraged him to work with Rosser. Plaintiff testified that he believes that Defendant impeded the green card process because it took six months to provide Attorney Rosser with a job description, because Plaintiff was employed for seven years and still had not received a green card, and because a coworker received a green card more promptly than did Plaintiff. Defendant denies that it impeded the process in any way, testifying that it made continued good faith efforts to support Plaintiff's filing of the petition.

Plaintiff avers that in October 2006, he became aware of a product engineering position in Reston, Virginia. Plaintiff testified that he made his interest known to Defendant in late December 2006 and that Defendant indicated that a decision would be made near the first of the year. The promotion opportunity was based on Defendant's expectation that it would enter into certain contracts with Google. Ultimately, the contracts were not entered into and the position in which Plaintiff was interested was never filled.

On January 8, 2007, Plaintiff attended an SKO meeting in Miami, Florida. The occurrences related to Plaintiff at the meeting are in dispute. Defendant sets forth evidence that it learned from a number of attendees that Plaintiff had become intoxicated and made unwelcome advances, some of which were of a sexual nature, toward several female employees. Defendant

conducted an investigation, which included interviews with and statements taken from coworkers Ballenger, Susan MacDonald, Kim Smith, Monica Laurin, Kate Tong, Erik Werner, Mike Murawski, supervisor Mattlin, advertising vice president Gouldin, and Plaintiff.

Based on this investigation, Defendant determined that Plaintiff was intoxicated at the event and had made numerous inappropriate advances and comments toward Defendant's employees.  Defendant suspended Plaintiff for five business days without pay and issued a letter of reprimand to him on January 17, 2007.  A formal report of the investigation and conclusion was prepared in connection with the investigation, and the letter of reprimand was placed in Plaintiff's personnel file.  Plaintiff was counseled regarding his conduct and encouraged to obtain alcohol abuse counseling.  Plaintiff signed, accepted, and agreed to the discipline.

With regard to his actions at the Miami SKO meeting, Plaintiff testified that he did not engage in some of the harassing actions of which he was accused, that he does not recall whether he engaged in some of the actions, and that some of the actions, *i.e.*, some of the hugging, kissing, and touching, were welcome and, therefore, not sexually harassing.  Further, Plaintiff contends that, although at the time of the discipline he signed, accepted, and agreed to it, he did so only because he was under the impression that he would be terminated if he did not.

On January 8, 2009, Plaintiff filed the instant action alleging he was discriminated against, retaliated against, and constructively discharged on the basis of his race, religion, and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and Chapter 4112 of the Ohio Revised Code, subjected to intentional infliction of emotional distress and defamed in violation of common law of Ohio.

On August 10, 2009, Defendant filed a motion to dismiss or in the alternative a motion to

transfer venue. (Doc. # 8.) This Court denied Defendant's request to transfer and granted Defendant's request to dismiss Plaintiff's claims for relief for intentional infliction of emotional distress and defamation. (Doc. # 25.) Defendant now moves for summary judgment on all Plaintiff's remaining claims for relief.

## II. Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). The Court must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in favor of that party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie Power Prods., Inc.*, 328 F.3d at 873

6

(quoting *Anderson*, 477 U.S. at 248).

### III.  Discrimination

Plaintiff claims that he was discriminated against based upon his race and religion, Jewish, and upon his national origin, Canadian.  The Court shall consider Plaintiff's "federal and state-law discrimination claims under the Title VII framework because Ohio's requirements are the same as under federal law."  *Carter v. Univ. of Toledo*, 349 F.3d 269, 272 (6th Cir. 2004) (citing *Ohio Civil Rights Comm'n v. Ingram*, 69 Ohio St. 3d 89 (Ohio 1994)).  To establish a Title VII employment discrimination claim, Plaintiff is "required to either 'present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment.' "  *Id.* at 272-73 (citing *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003)).  Plaintiff contends that he has presented both direct and circumstantial evidence of discrimination.

### A.  Direct Evidence

Direct evidence, if believed, requires a factfinder to conclude without the aid of inferences that unlawful discrimination at least partly motivated the employer in the challenged employment action.  *Jacklyn v. Shering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999) (citations omitted).  Such direct evidence might include facially discriminatory employment policy documents or express statements by decisionmakers that indicate an intent to discriminate against employees in the protected group.  *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) and *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 379-80 (6th Cir. 1993)).  Here, Plaintiff claims that the comments made by his coworkers are direct evidence

7

of discrimination. This Court disagrees.

The Sixth Circuit "has held that comments made by individuals who are not involved in the decision-making process regarding the plaintiff's employment do not constitute direct evidence of discrimination." *Carter*, 349 F.3d at 273 ("Murry was not a decision-maker with regard to the renewal of Carter's visiting professorship. His statements therefore cannot be considered direct evidence of racial discrimination against Carter.") (citing *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 433 (6th Cir. 2002) (holding that a company manager's opinion that "race was a factor" in the company's decision not to promote the plaintiff was not direct evidence for purposes of the plaintiff's discrimination claim because the manager had "no involvement in the decision-making process with respect to the particular jobs at issue")).

In the instant action, Plaintiff admits that no decisionmaker made any of the comments at issue. Plaintiff argues, however, that there is still direct evidence of discrimination because the critical question is whether the person making the biased remarks was in a position to influence the decision made by the ultimate decisionmaker:

> Although those individuals did not supervise [Plaintiff] Green, they were in a position to influence management concerning [Plaintiff] Green's employment at Tandberg. In *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354-55 (6th Cir. 1998), the Sixth Circuit reiterated that a finding of discrimination could be based on "remarks by those who did not independently have the authority or did not directly exercise their authority to fire the plaintiff, but who nevertheless played a meaningful role in the decision to terminate the plaintiff . . . ."

(Doc. # 46 at 12.)

While the Court agrees that Plaintiff has set forth a correct statement of the law, Plaintiff offers no evidence whatsoever as to how the individuals who made the comments at issue here were in a position to influence management concerning Plaintiff's employment. Neither has

Plaintiff offered any evidence as to any meaningful role his coworkers who made the remarks played in the alleged adverse actions to which Plaintiff was allegedly subjected.  *See e.g., Ercegovich*, 154 F.3d at 354-55 (noting that the individual who allegedly made age related comments - but was not ultimately responsible for terminating the plaintiff's employment - was the "head of the entire Retail Sales Division" and was "in a position to shape the attitudes, policies, and decisions of the division's managers," including those ultimately responsible for the adverse employment action taken against plaintiff).

Consequently, when viewing the proffered "direct" evidence of in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, Plaintiff has failed to set forth specific facts showing that there is a genuine issue of material fact for trial.

## B.  Circumstantial Evidence

Where a plaintiff fails to present direct evidence of discrimination, the burden shifting framework first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and refined by *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981), applies.  *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000).  Under that paradigm, a plaintiff must first present a *prima facie* case of discrimination.  *Id.*  Establishing a *prima facie* case creates a rebuttable presumption of discrimination and the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for taking the challenged employment action.  *Id.* at 573 (citing *McDonnell Douglas*, 411 U.S. at 802).  If the defendant satisfies this burden, the plaintiff must then prove that the proffered reason was actually a pretext to hide unlawful discrimination.  *Id.* (citation omitted).

"To establish a *prima facie* case of discrimination by the defendant, 'the plaintiff must

show (1) that he is a member of a protected group, (2) that he was subject to an adverse employment decision, (3) that he was qualified for the position, and (4) that he was replaced by a person outside of the protected class. . . . the fourth element may also be satisfied by showing that similarly situated non-protected employees were treated more favorably.' " *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (quoting *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995) (alteration in original). The parties dispute only whether Plaintiff was subjected to an adverse employment decision.

"An adverse employment action is a 'materially adverse change in the terms or conditions of . . . employment because of [the] employer's conduct.' " *Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002) (citing *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996) (alteration in original)). "[A] materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999) (citing *Kocsis*, 97 F.3d 886). "[A] change in employment conditions 'must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Kocsis*, 97 F.3d at 886 (citation omitted). Thus, *de minimis* employment actions, such as reassignments without changes in salary, benefits, title, or work hours usually do not constitute adverse employment actions. *Id.* at 885.

Defendant argues that it is entitled to summary judgment because Plaintiff has failed to show that he was subjected to any materially adverse employment action, and even if he were able to show that he suffered an adverse employment action, Defendant articulated a legitimate,

nondiscriminatory reason for taking the action, which Plaintiff cannot show to be pretextual. This Court agrees.

### 1. Plaintiff's permanent residency application

Plaintiff contends that he was subjected to a materially adverse employment action by Defendant "refusing to work with Plaintiff to provide him with the necessary documents to obtain a green card."   (Doc. # 2 ¶¶ 25, 28, 31, 34, 37, 38, 42, 45.)  Plaintiff averred that he "expressed [his] interest in obtaining permanent residency status" in the United States "[s]oon after beginning employment with [Defendant.]" (Doc. # 46-1 at ¶ 5.)  Plaintiff testified that during his employment, Defendant took all necessary steps to ensure his temporary employment in the United States but, he believes, never seriously pursued his permanent residency status.

Plaintiff, however, misapprehends the nature of an adverse employment action.  Even accepting Plaintiff's speculation that Defendant never seriously pursued assisting him in his permanent residency petition, that fact in no way constitutes a change in Plaintiff's employment status, let alone a materially adverse one.   Indeed, Plaintiff's employment status with respect to his ability to work and live in the United States was in no jeopardy at all when Plaintiff resigned. Neither did not receiving his green card cause Plaintiff to be demoted, have his salary decreased, cause Plaintiff a material loss of benefits, or cause him to be given significantly diminished material responsibilities.  In other words, it had no material affect whatsoever on his employment.  Consequently, Defendant's failure to seriously support Plaintiff's request for a green card does not constitute a materially adverse employment action.

Accordingly, even when viewing the evidence in the light most favorable to Plaintiff, and drawing all reasonable inferences in his favor, he has failed to set forth a *prima facie* case of

discrimination based upon his complaints regarding his permanent residency application.

## 2. Discipline

Plaintiff's discipline constitutes a materially adverse employment action.  Plaintiff was suspended without pay for five days and was given restricted job responsibilities. Thus, Defendant is required to set forth a legitimate, nondiscriminatory reason for the discipline, which it has.  That is, based upon its investigation, Defendant determined that Plaintiff was intoxicated at a work function and harassed several of his coworkers.  Defendant "need only articulate a nondiscriminatory rationale; it need not prove it."  *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996) ("It is important to note that the defendant need not prove a nondiscriminatory reason for not promoting Hartsel, but need merely articulate a valid rationale.") (citing *Mary's Honor Center v. Hicks*, 509 U.S. 502, 514 (1993)).

Because Defendant has met its burden of articulating a legitimate, nondiscriminatory reason for disciplining Plaintiff, the burden now shifts to Plaintiff to demonstrate that the proffered reason was not the true reason for his discipline but was instead a pretext for unlawful discrimination.  *Burdine*, 450 U.S. at 255; *Manzer*, 29 F.3d at 1082.  To raise a genuine issue of material fact on the credibility of Defendant's explanation for Plaintiff's discipline, Plaintiff "is 'required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate his [discipline], or (3) that they were *insufficient* to motivate [discipline].' "  *Id.* at 1084 (emphases in original and citation omitted).  "To carry h[is] burden in opposing summary judgment, [Plaintiff] must produce sufficient evidence from which a jury could reasonably reject [Defendant]'s explanation of why it [disciplined him]."  *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009  (citing *Mickey*

12

*v. Zeidler Tool and Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008) (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir.2001)).

Plaintiff argues under the first and third *Manzer* prongs, that Defendant's proffered reason for disciplining Plaintiff was false and that it was insufficient to motivate the discipline.

### a. Did the proffered reason for Plaintiff's discipline have a basis in fact?

"The first type of showing [of pretext] is easily recognizable and consists of evidence that the proffered bases for the plaintiff's [discipline] never happened, *i.e.*, that they are 'factually false.' " *Id.* Here, Plaintiff argues that the bases for his discipline was false; that is, the events did not happen. The testimony upon which Plaintiff relies, however, does not constitute a denial that the events for which he was disciplined never happened. Instead, Plaintiff testified that he did not engage in *some* of the harassing actions of which he was accused, that he does not recall whether he engaged in some of the actions, and that some of the actions were welcome and, therefore, not sexually harassing. (*See e.g.,* Plaintiff Depo. at 175-187; Doc. # 45-2) ("in terms of unwelcome [advances], I would say no" I did not make any; "Yes, I might have asked her for a hug"; "I don't recall that."; "I don't specifically remember that exact statement [can I kiss you?]. She had kissed me in the past. . . ."; "I think she is definitely overly exaggerating those events; I did not thrust my hips toward her when dancing; "I think I recall giving her a kiss back."; I, like others, briefly touched her pregnant stomach–"she welcomed it and then seemed to complain about it later on.").

Even if the Court were to accept Plaintiff's argument that his testimony is an outright denial of the conduct that constituted the basis of his sexual harassment discipline, Plaintiff's argument still fails. That is because Plaintiff's argument misconstrues the law in the Sixth

Circuit:

> In arguing that the facts underlying the stated reason for his discharge never
> happened, Plaintiff misconstrues the law of this Circuit.  Plaintiff is required to show
> "more than a dispute over the facts upon which the discharge was based."
> *Braithwaite v. The Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001).  Plaintiff must put
> forth evidence that Defendants did not "honestly believe" in the given reason for
> Plaintiff's termination.  *Id.*

*Abdulnour v. Campbell Soup Supply Co.*, LLC, 502 F.3d 496, 502 (6th Cir. 2007).  *See also*

*Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) ("as long as

an employer has an honest belief in its proffered nondiscriminatory reason for discharging an

employee, the employee cannot establish that the reason was pretextual simply because it is

ultimately shown to be incorrect"); *Chandler v. Potter*, No. C-1-04-486, 2006 U.S. Dist. LEXIS

1506, at *14 (S.D. Ohio Jan 17, 2006) ("Plaintiff misapplies [the first *Manzer*] prong in arguing

that she did not, in fact, insult or threaten Brunswick as claimed by Brunswick and Crutcher. The

issue is not whether the claims are, in fact, false.  Rather, the issue is whether the claims were in

fact made, and Defendant's action was based on said claims.").

    In determining whether Defendant had an "honest belief" in the proffered basis for the

adverse employment action, the Court examines whether Defendant established a "reasonable

reliance" on the particularized facts available to it in disciplining Plaintiff.  *Abdulnour*, 502 F.3d

at 502-03 (citing *Braithwaite*, 258 F.3d at 494).  "The critical inquiry is whether Defendant[]

made a 'reasonably informed and considered decision.' "  *Id.* (quoting *Smith v. Chrysler Corp.*,

155 F.3d 799, 807 (6th Cir. 1998)).

    Here, the evidence before the Court shows that Defendant received complaints about

Plaintiff's behavior at the Miami SKO meeting and that Defendant engaged in an extensive

investigation of those complaints.  That investigation included interviews of nine individuals

14

who were present and observed Plaintiff's conduct at the Miami SKO meeting.  Plaintiff sets

forth no evidence that these complaints and statements were not made.  Plaintiff's bare assertion

that Defendant's proffered reason has no basis in fact is insufficient to call an employer's honest

belief into question, and fails to create a genuine issue of material fact.  *Majewski*, 274 F.3d at

1117.

      The Court concludes that Defendant made an informed and considered decision to

discipline Plaintiff, reasonably relying on the particularized facts that were available to it and

that Plaintiff failed to raise a genuine issue of material fact as to whether Defendant's decision

was pretextual.

      **b.  Was the proffered reason for Plaintiff's discipline sufficient to motivate
Defendant to discipline him?**

      Similar to the first showing, the third way to demonstrate pretext "is also easily

recognizable and, ordinarily, consists of evidence that other employees . . . were not [disciplined]

even though they engaged in substantially identical conduct to that which the employer contends

motivated its [discipline] of the plaintiff."  *Manzer*, 29 F.3d at 1084.  The Sixth Circuit explains:

> Smith also tried to establish pretext under the third *Manzer* prong by demonstrating
> that he was treated differently than similarly situated employees.  This type of
> evidence "consists of evidence that other employees, particularly employees not in
> the protected class, were not fired even though they engaged in substantially
> identical conduct to that which the employer contends motivated its discharge of the
> plaintiff."  *Manzer*, 29 F.3d at 1084.  To be similarly situated, "the individuals with
> whom the plaintiff seeks to compare his/her treatment must have dealt with the same
> supervisor, have been subject to the same standards and have engaged in the same
> conduct without such differentiating or mitigating circumstances that
> would distinguish their conduct or the  employer's treatment of them for it."  *Ercegovich*,
> 154 F.3d at 352 (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.
> 1992)).  Exact correlation is not required, however.  *See id.*  Rather, "the plaintiff and
> the employee with whom the plaintiff seeks to compare himself or herself must be
> similar in 'all of the relevant aspects.' "  *Ercegovich*, 154 F.3d at 352 (quoting *Pierce
> v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)); *see also Harrison*

> *v. Metro Government*, 80 F.3d 1107, 1115 (6th Cir. 1996) (noting that "precise
> equivalence in culpability between employees" is not required when comparing
> similarly situated, non-minority employees).

*Smith v. Leggett Wire Co.*, 220 F.3d 752, 762 (6th Cir. 2000).

Plaintiff argues that he has demonstrated this type of pretext because one of the first statements from Dave Mattlin, Plaintiff's manager, at the Miami SKO was that Mattlin knew where to find a prostitute at a nearby massage parlor. Plaintiff further testified that he was contacted by a coworker who left Defendant's employ because she was embarrassed at a company sponsored SKO event known as "Lap Dance Tuesday." This evidence, however, does not support a finding of pretext.

Neither of the individuals with whom Plaintiff compares himself engaged in substantially identical conduct to that which Defendant contends motivated its discipline of Plaintiff. *See Leggett Wire Co.*, 220 F.3d at 762 ("The comparisons are inapt however, because Smith was disciplined by a different decisionmaker and engaged in different conduct than Reed, Hopper and Banta."). Plaintiff presents no other evidence to support his claim that he was treated less favorably than similarly situated coworkers who engaged in substantially similar conduct. Consequently, the Court concludes that even when viewing the evidence in the light most favorable to Plaintiff, and drawing all inferences in his favor, Plaintiff failed to raise an issue of material fact as to whether Defendant's proffered reasons for his discipline was insufficient to motivate Defendant to discipline him.

### 3. Promotion

In January 2007, Plaintiff claims that he discovered that he had been denied a promotion in which he had expressed interest. Initially, the Court notes that it is unclear whether this

alleged denial of promotion constitutes an adverse employment action.  The Sixth Circuit has stated that under the adverse action "definition, it would appear that a purely lateral transfer or denial of the same, which by definition results in no decrease in title, pay or benefits, is not an adverse employment action for discrimination purposes."  *Momah v. Dominguez*, 239 F. App'x 114, 123 (6th Cir. 2007) (citing  Kocsis, 97 F.3d at 886).  Here, Plaintiff is very vague about this "promotion opportunity," never indicating whether he actually applied for the position.

Assuming *arguendo* that the denial of the promotion does constitute a materially adverse employment action, Plaintiff still cannot establish a *prima facie* case of discrimination.  This is because Defendant has offered a legitimate, nondiscriminatory reason for the denial, which Plaintiff cannot show to be pretextual.  Defendant has set forth evidence establishing that the promotion opportunity in which Plaintiff was interested was based on Defendant's expectation that it would enter into certain contracts with Google.  Ultimately, however, the contracts were not entered into and the position in which Plaintiff was interested was never filled.  Plaintiff does not even attempt to show that this legitimate, nondiscriminatory reason was a pretext for a discriminatory denial of a promotion to Plaintiff.  Thus, even when construing the evidence in Plaintiff's favor, he has failed to set forth a *prima facie* case of discrimination based upon his failure to receive the promotion in which he was interested.

### 4. Constructive Discharge

Plaintiff alleges that he was constructively discharged based upon the totality of the circumstances to which he was subjected prior to his resignation.  To establish a constructive discharge, Plaintiff must show that Defendant, (1) "deliberately create[d] intolerable conditions," as perceived by a reasonable person, (2) "with the intention of forcing" Plaintiff to quit.  *Moore*

17

*v. Kuka Welding Sys.*, 171 F.3d 1073, 1080 (6th Cir. 1999).  Plaintiff must show that his working conditions were not merely hostile, but rather "so difficult or unpleasant that a reasonable person" in his shoes "would have felt compelled to resign."  *Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6th Cir. 1982) (citation omitted); *see also Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 515 (6th Cir. 1991).  A constructive discharge analysis requires an inquiry "into both the objective feelings of the employee and the intent of the employer."  *Yates v. Avco Corp.*, 819 F.2d 630, 636 (6th Cir. 1987).  "Intent can be shown by demonstrating that quitting was a foreseeable consequence" of Defendant's conduct.  *Moore*, 171 F.3d at 1080.

Plaintiff argues that the following together constitute constructive discharge:  five times his coworker called him a fucking Jew between 2002 and 2004, twice in front of the human resources director; the same coworker called him a fucking Canadian six and eight times between 2002 and 2006 and two other coworkers called him that same name one time each during the same time period; comments from coworkers that Defendant interfered with the green card process, Defendant taking six month to provide Plaintiff's job description, and Plaintiff's belief that a coworker received his green card in less time than did Plaintiff; not obtaining a promotion in which he was interested; being disciplined for harassment; and the alleged lack of support from his coworkers as evidenced by Plaintiff not receiving equipment he requested on one occasion.  Plaintiff's argument fails for two reasons:  because it is partly based upon claims that lack evidentiary support, and because the claims that do have evidentiary support are insufficient to show that Defendant deliberately created intolerable conditions, as perceived by a reasonable person, with the intent of forcing Plaintiff to quit.  *See Moore*, 171 F.3d at 1080.

First, some of Plaintiff's arguments lack evidentiary support.  Specifically, with regard to

Plaintiff's belief that Defendant hindered his permanent residency application, Plaintiff relies on statements from his coworkers that Defendant was trying to interfere with his green card application; upon his belief that a coworker received his green card quicker than Plaintiff; and, upon the allegation that Defendant took six months to provide certain paperwork to Plaintiff's immigration attorney.

With regard to his coworker's comments, Plaintiff speculates from these that Defendant actually took affirmative steps to interfere with Plaintiff's permanent residence application.  The evidence before the Court however belies Plaintiff's assertion.  Although it had no obligation to do so, Defendant sponsored Plaintiff's green card application and, indeed, provided to Plaintiff $2,000.00 and an immigration attorney.  Even after Plaintiff was disciplined in January 2007, Defendant expressed to him that it considered him a good employee, as shown by its support of his greed card application:

> By all accounts, you are and have been a valuable employee of the company.  One indication of this is that the company is assisting you in obtaining permanent residence status in the United States.  There is no reason that this incident should be anything more than a temporary setback in your relationship with the Company.  It is hoped and expected that you will have a long and successful career at TANDBERG.

(Doc. # 43-2) (emphasis in original).  The evidence before the Court shows that Defendant took affirmative steps to support Plaintiff's application for a green card.  Plaintiff's reliance upon "rumors, conclusory allegations and subjective beliefs [] are wholly insufficient evidence to establish a claim of discrimination as a matter of law."  *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992) (citations omitted).

Also lacking evidentiary support is Plaintiff's allegation that Defendant took six months to provide his job description to his immigration attorney, which Plaintiff contends shows how

19

Defendant interfered with the green card process.  The evidence before the Court, however, shows that the delay was caused by Plaintiff.  That is, Defendant provided to Attorney Rosser a job description of a product engineer.  Later, Plaintiff expressed to his attorney that he wanted to pursue his permanent residency status based upon a sales engineer position.  Attorney Rosser was then required  request a second job description and determine the ICE category in which the application would be placed.  (Doc. # 43-2 at 86; email from Attorney Rosser to Plaintiff and Defendant) ("Since this [newly named] position can be filled by someone with a HS degree and 10 years of experience it will not qualify for a second preference classification (EB-2 - the category with no backlog[.]").

Further, Plaintiff's belief that his nonprotected status coworker received his green card faster than did Plaintiff completely lacks evidentiary support.  There is no evidence before the Court related to this coworker.  The only evidence Plaintiff offers is his testimony as to when this coworker received his green card.  There is no evidence as to when the coworker requested Defendant to support his application or what position the coworker held.  As Attorney Rosser explained, "a second preference classification" had no backlog whereas the classification in which Plaintiff's position was placed had a three and one-half year backlog.  Therefore, the Court cannot make any relevant comparisons between Plaintiff and his proposed comparator, leaving the Court again, with only Plaintiff's conclusory allegations and subjective beliefs, which are not sufficient evidence.  *See Mitchell*, 964 F.2d at 858.

The last item lacking evidentiary support is Plaintiff's claim regarding the alleged denial of a promotion.  Plaintiff merely speculates that he was not given the job based upon the fact that he is a Jewish Canadian.  As explained above, the evidence before the Court shows that the

position was never filled because Defendant failed to obtain the contract on the work the position was designed to support.  Once again, Plaintiff's conclusory allegations and subjective beliefs are "wholly insufficient."  *Mitchell*, 964 F.2d at 858.

Second, as to the remaining events, the evidence does not show that Defendant created these circumstances with the intention of forcing Plaintiff to quit.  *See Moore*, 171 F.3d at 1080. (Plaintiff must show that Defendant deliberately created intolerable conditions, as perceived by a reasonable person, with the intention of forcing Plaintiff to quit).  With regard to the discipline, as discussed *supra*, Defendant made an informed and considered decision, reasonably relying on the particularized facts that were available to it when it disciplined Plaintiff.  Also, in the disciplinary letter to Plaintiff, Defendant expressed its specific intent to work with Plaintiff so that he could remain employed with Defendant.  As to the comments related to Plaintiff's Jewish heritage, three years before Plaintiff resigned, Defendant informed Plaintiff that the coworker who made the comments would be disciplined, sent to sensitivity training, and prevented from engaging in the name-calling.  And, indeed, Plaintiff admits that he was never again subjected to that comment for the final three years of his employment.

This leaves the Court with the derogatory comments made to Plaintiff about his Canadian citizenship–the last one being at least a year and one half before he resigned–and the fact that on one occasion Plaintiff was not provided the equipment he requested while a nonprotected category coworker was provided that equipment.  These events, however, are insufficent to indicate that Defendant had the intent to force Plaintiff to quit.  Quitting is simply not a forseeable consequence of not providing an employee equipment on one occasion and not attempting to prevent the employee from being called a fucking Canadian on six to ten

21

occasions.  While the Court does not make light of the offensive nature of the comments, that is not the inquiry.  Title VII was simply "not designed to purge the workplace of vulgarity." *Black v. Zaring Homes*, 104 F.3d 822, 826 (6th Cir. 1997) ("Although the verbal comments were offensive and inappropriate, and the record suggests that defendant's employees did not always conduct themselves in a professional manner, Title VII was "not designed to purge the workplace of vulgarity.") (citation omitted); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (imposing "sufficiently demanding" standards under Title VII so that it "does not become a general civility code" in the workplace) (citation omitted)

Even if the intent to force Plaintiff to quit could be shown by Defendant's action or inaction with regard to the conditions to which Plaintiff was subjected, the conditions were not "so difficult or unpleasant that a reasonable person" in his shoes "would have felt compelled to resign."  *Moore*, 171 F.3d at 1079 (finding evidence "not overwhelming," but sufficient to allow to go to a jury the plaintiff's subjection to "a fairly steady stream of racial jokes and slurs," such as "hey nigger," and "kill all niggers" was written on the bathroom wall, without any company action taken; supervisor instructed the plaintiff to drive a white employee while the white employee sat in the back seat presenting the appearance that the plaintiff was chauffeuring the white employee; and subjection to more than a year's worth of supervisor-mandated, daily isolation from all other employees who were instructed not to talk to the plaintiff and to remove their tool boxes from his area so they would have no reason to enter his working area, even instructing janitor not to clean the area).

Accordingly, even when viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, the evidence is not such that a reasonable jury

could return a verdict in his favor on his constructive discharge claim.  That is, Plaintiff failed to raise a genuine issue of material fact as to whether he was constructively discharged.

### IV.  Retaliation

Plaintiff contends that Defendant retaliated against him for complaining about being called a fucking Jew and a fucking Canadian.  Plaintiff testified that he complained to Defendant's management or human resources about the Jew comment three times, in 2002, 2003, and in 2003 or 2004.  Plaintiff testified that he complained to Defendant's management or human resources about the Canadian comment at the same times he complained about the Jew comment in 2002 and 2003 and also approximately 6 additional times about the Canadian comment alone from 2002 through 2006.  Plaintiff argues that after he made these complaints, Defendant retaliated against him by interfering with his green card application, disciplining him for harassment, and constructively discharging him.  Plaintiff filed claims of retaliation under Title VII and the Ohio Revised Code Chapter 4112.

The Court analyzes Plaintiff's federal and state claims under a Title VII analysis because the Ohio Civil Rights Act mirrors Title VII in all relevant respects for Plaintiff's retaliation claims.  *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 760 n.1 (6th Cir. 2008) (citing Ohio Rev. Code § 4112; *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008); *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008); *Staunch v. Continental Airlines, Inc.*, 511 F.3d 625, 631 (6th Cir. 2008)).  In a case like this, where Plaintiff does not have direct evidence of retaliation, he must rely upon the burden shifting framework articulated in *McDonnell Douglas Corp.*, 411 U.S. 792 (1973), and *Burdine*, 450 U.S. 248, to create an inference of retaliation.

Under this burden shifting analysis, Plaintiff must first establish a *prima facie* case of retaliation by showing that: (1) he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to Defendant; (3) Defendant thereafter took adverse employment action against Plaintiff, or Plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment. *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000) (modifying standard to provide for not only adverse action retaliation but also retaliatory harassment by a supervisor).

If Plaintiff establishes a *prima facie* case, the burden of production of evidence shifts to Defendant to articulate some legitimate, nonretaliatory reason for its actions. *Id.* at 792-93 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802). "[Plaintiff], who bears the burden of persuasion throughout the entire process, then must demonstrate 'that the proffered reason was not the true reason for the employment decision.' " *Id.* at 793 (citing *Burdine*, 450 U.S. at 256).

In the instant action, Plaintiff has failed to establish the third prong of his *prima facie* case, *i.e.*, that Defendant took an adverse employment action against Plaintiff or that Plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor. As explained in detail *supra*: interference with Plaintiff's green card application is not a materially adverse employment action, even if, in fact, such did occur, which this Court found that it did not; Plaintiff's allegations combined do not rise to the level of  a constructive discharge; and, Defendant made an informed and considered decision to discipline Plaintiff, reasonably relying on the particularized facts that were available to it.

Further, Plaintiff has failed entirely to demonstrate retaliatory harassment. To show

retaliatory harassment, Plaintiff must show that he was subjected to "severe or pervasive retaliatory harassment by a supervisor." *Morris*, 201 F.3d at 792.  To demonstrate severe or pervasive retaliatory harassment, Plaintiff must show that "the workplace is permeated with discrimination, intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment […]." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993). An assessment of whether the alleged conduct is severe or pervasive is based on the totality of the circumstances alleged. *See Williams v. GMC*, 187 F.3d 553, 562 (6th Cir. 1999).

Here, the name-calling to which Plaintiff was subjected was unquestionably offensive. None of it, however, was done by a supervisor.  Further, the temporal proximity of the events however detracts from the alleged severe and pervasive nature of the comments.  That is, it was over three years before Plaintiff resigned that he was last called the name related to his Jewish descent and faith, and as to the name related to his Canadian citizenship, he was called that name only once in 2006, well before his July 2007 resignation.

 Again, the Court does not downplay the offensive nature of the comments but they are not sufficient to render the workplace "permeated with discrimination, intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of" Plaintiff's employment. *Harris*, 510 U.S. at 21.

Accordingly, even when viewing the evidence in the light most favorable to Plaintiff, and drawing all reasonable inferences in his favor, Plaintiff has failed to raise a genuine issue of material fact requiring submission of his retaliation claim to a jury.

### V.  Conclusion

Based on the foregoing, the Court **GRANTS** Defendant Tandberg, Inc.'s Motion for

Summary Judgment.  (Doc. # 43.)  The Clerk is **DIRECTED** to **ENTER JUDGMENT** in

accordance with this Opinion and Order.

      **IT IS SO ORDERED.**

                                                **/s/ Gregory L. Frost**
                                                **GREGORY L. FROST**
                                                **UNITED STATES DISTRICT JUDGE**